SHARROCK vs KREIGER.

Opinion rendered November 24, 1906.

. (98 S. W. Rep. 161).

1. *Actions—By Indians for Recovery of Lands—Nature of.*
　　Sec. 3 of the Act of June 28, 1898 (30 Stats. 495) providing for the

recovery of the value of improvements placed on the tribal lands prior to June 28, 1898, under a valid lease executed prior to said date, did not change the character of the action, that is from proceedings at law to an action in equity.

2. *Actions in Equity and at Law—Transfer of Cause from Latter to Former.*

The parties to an action at law believing that same should be transferred to the equity docket, consented to same and proceeded accordingly. *Held;* That though the transfer was irregular, the parties thereby waived their right to trial by jury.

3. *Actions—Defenses.*

Under the procedure in this jurisdiction an equitable defense is permissable to an action at law.

4. *Repeal—Without Saving Clause—Effect.*

It is a general rule, that the repeal by the Legislature, without a saving clause, of an act it is considered, except as to transactions past and closed, as never having existed. And the repeal of an act conferring jurisdiction deprives the court of authority to further act.

5. *Same—When Part of Judgment Rests on Repealed Statute.*

When an act conferring jurisdiction is repealed pending an action, that portion of said judgment which rests upon the jurisdiction conferred by said repealed act is void and of no effect.

6. *Trial—Irregular Transfer—Retransfer Upon Repeal of Statute.*

Where parties to an action, acting under a misapprehension, transfer the cause from the legal to the equitable docket and the statute conferring jurisdiction on the Court of Equity is repealed pending the action, either party may, on motion, have the cause retransferred to the law side and trial by a jury if so desired.

Appeal from the United States Court for the Southern District of the Indian Territory; before Justice Hosea Townsend, February 15, 1901.

Action of forcible detainer by William Kreiger against A. N. Sharrock. Judgment for plaintiff, and defendant appeals. Reversed.

*Ledbetter & Bledsoe,* for appellant.

*Garrett & Bingham* and *C. L. Herbert,* for appellee·

LAWRENCE, J. August 21, 1900, appellee, a Choctaw Indian and citizen, brought an action of forcible detainer against appellant, a noncitizen, to recover the possession of 500 acres of land situate in the Choctaw Nation, and $1,000 damages for its unlawful detention. He alleges the purchase of the land in March, 1899, of one Dillard, a Choctaw· Indian and citizen; that appellant was then occupying it as Dillard's tenant; that he became entitled to the possession January 1, 1900, under the provisions of section 23 of the act of Congress approved June 28, 1898 (30 Stat. 504, c. 517), known as the "Curtis Bill;" that he had made written demand of appellant 30 days prior to said date that he surrender said possession, which appellant had failed to do; that the rental value of the land is $1,000 per year, for which, and for immediate possession of the premises, he asks judgment. The appellant answered denying appellee's right to said possession, his purchase of the premises from Dillard, the unlawful detention, the rental value at $1,000 a year, and of damages. As an affirmative defense he alleges that on December 23, 1890, under written contract with George W. Roberson and wife, Choctaw Indians and citizens of the Choctaw Nation, he became entitled to the possession of the land for a term beginning January 1, 1891, and ending January 1, 1911, for the consideration of the sum of $3,000 rent, which amount he then paid in money and has occupied the land since January 1, 1891, under said contract; that, subsequent to making said contract, Roberson and wife sold their interest under the contract to one Colbert, who agreed to carry out the terms of the contract; that Colbert sold his interest to said Dillard, from whom the plaintiff claims to have purchased, with notice of said contract; that, in ac-

cordance with the terms of said contract, he put in a good state of cultivation 410 acres of land and erected valuable and lasting improvements thereon, amounting to $8,060. He further alleges that the reasonable rental value of said lands from 1891 to the time this action was begun is $2,700, leaving a balance of $300 due defendant on the $3,000 rent paid, and for his said improvements, $8,060. He prays judgment against plaintiff in the sum of $8,360, or for possession of the lands a sufficient length of time, at a reasonable rent, until said sum of $8,360 is satisfied. A demurrer to so much of said answer as sets up the payment of $3,000 in money as rent was sustained, to which the appellant excepted. Appellant further answered repeating his former answer, and, in addition thereto, asked that, if plaintiff be shown to be the owner of the premises in question, appellant be allowed said sum of $8,060 and judgment therefor against appellee, or judgment for the home place he occupies, of 160 acres, and which he thereby selects, a sufficient length of time to reimburse him for said sum of $8,060 at a reasonable rent per acre per annum. Appellee replied denying the making of any improvements by appellant, and denied that he was entitled to the sum of $8,060 or any other sum.

It is stated by counsel for appellee, and not disputed by counsel for appellant, that the court transferred the case from the law to the equity docket for the reason that the defense set up was equitable, but such order nowhere appears in the transcript of the record. February 15, 1901, the court referred the case to the master in chancery, with directions to hear evidence as to the rental value of the lands, and as to the value of the improvements, and to report his findings of facts therein at an early day. Thereupon, as appears of record, there was an agreement of counsel for both parties that the question of title raised by the pleadings be referred to the

master, which agreement was made in open court, and it was further ordered by the court that said question of title be referred to the master for his findings. On December 26, 1901, the master filed his report. He finds that plaintiff is a Choctaw Indian citizen and the owner of the land and improvements in question; that they were made under a lease contract; that the defendant was notified 30 days before bringing this suit to vacate the premises, and refused to do so; that the improvements upon the land were of the value of $5,213.60, and the rental value of the land $6,286.50, leaving a balance of $1,072.90 due the appellee; that there was 440 acres of land put in cultivation on the premises, being 280 acres in excess of 160 acres that a noncitizen is entitled to pay for improvements under the act of Congress known as the "Curtis Bill;" that no selection was made by appellant of the land he desired to hold, and that no division of the entire rents could be made. Exceptions to this report were filed by the appellant, the principal one being the error of the master in finding that no selection had been made by appellant of 160 acres.

February 3, 1902, the appellant moved the court to re-refer this cause to the master in chancery with instructions to find specifically the time under which Dillard, the vendor of appellee, had possession of the premises and collected rents and the value of the same. February 15, 1902, the court ordered the rereference on said motion, with directions to the master to take an account as to rents and improvements on 160 acres of land selected by appellant, and to take an accounting only on said 160 acres since same had been in possession of defendant, and an accounting of the lasting and valuable improvements made thereon by appellant since he had been in the quiet and peaceable possession of the same, and what part, if any, had been taken from the possession of appellant as alleged by him, and for what purpose and who received

the rents, and whether or not the rents so received went to pay debts of appellant or were otherwise used. The appellee excepted to this order of rereference. On December 18, 1902, the master made his report under the rereference, in which he states that he set September 11, 1902, after notice given to both parties, for the hearing of evidence under said rereference, and that defendant failed to appear. The hearing was continued to September 25, 1902, and the defendant failed to appear, and it was again continued to October 8, 1902, and the defendant failed to appear, and failed to select 160. acres upon which he should claim his improvements as directed by the court, and, the same not having been selected, the master reported that he was unable to comply with that part of the order directing him to find the value of the improvements and rents on said 160 acres of land. He reports, however, that he finds, after a careful investigation of the evidence theretofore taken, that about 190 to 200 acres of the old land then in cultivation was, for the years 1895 and 1896, by the order of the court, taken from the appellant and put in the hands of a receiver, who applied the rents, under direction of the court, to the satisfaction of a mortgage given by appellant to Dillard, plaintiff's vendor. Upon notice given by appellee of a motion for judgment against the appellant the appellant filed his protest thereto December 29, 1902, presenting various objections to the rendering of the judgment against him, the principal one being that the act of Congress approved July 1, 1902, entitled, "An act to ratify and confirm the supplemental treaty of the Choctaw and Chickasaw Nations" repealed the third section of the Curtis bill (30 Stat. 496, c. 517), which gave the court jurisdiction to consider and determine the rights of a tenant in possession for allowance for improvements made to offset rents and profits, and for that reason the court is now without authority to enter up against this appellant any decree whatever by reason of such

proceedings, and that the court must disregard all proceedings had before the master in chancery and try this case solely without reference to said proceedings; and therefore prayed that the said proceedings be disregarded and the cause transferred to the law docket, and the court require plaintiff and permit defendant to reform their pleadings to conform with said law as it now exists, and that, upon the issues made, the cause be tried by a jury.

In disregard of said protest the court, on said date, rendered a decree confirming both reports of the master finding the plaintiff to be the owner entitled to possession of the premises sued for, that the improvements thereon were reasonably of the value of $5,213.65, and the reasonable rental value of the same up to and including the year 1901 was $6,286.50, and, it further appearing to the court, by stipulation of the parties filed of date September 9, 1902, that the findings of the master for the value of said improvements are accepted as true and the rental value of the land is correct, and, it also appearing to the court that, when this action was begun, the appellant gave bond and retained possession of the premises by virtue thereof, the court decreed that this appellee, William Kreiger, have and recover from this appellant, A. N. Sharrock, the possession of the premises sued for, and that he have and recover of said appellant and his bondsmen, Will Edwards and F. G. Roberson, the sum of $1,732.90 damages, being the rental value of said premises up to and including 1902 in excess of the value of said improvements as found by the master, with interest thereon from the date thereof at 6 per cent. per annum together with all costs, and that execution issue, to all of which the defendant then and there excepted. It is further decreed that motion of appellant—that the court disregard master's report and all proceedings had herein under hird section of the Curtis act—is disregarded, and the motion

that the cause be transferred to the law docket and the court require plaintiff and permit defendant to reform the pleadings, and, upon the issue arising in said cause, this defendant be given a trial by jury is overruled and denied, to which the defendant then and there excepted. It is further decreed that defendant's prayer and motion that, in the event this case be not transferred to the law docket as prayed in such motion filed December 29, 1902, the case be retained on the equity docket and the court proceed to make a full investigation of defendant's expenditures of money labor and improvements on the premises in controversy, and that an account be taken aside from the findings hereinbefore had to the end that the plaintiffs be not permitted to take advantage of the provisions of section 23 of said Curtis bill to deprive defendant of the possession of said premises, and rob him of his money, labor and improvements on said premises, and that, before premises be awarded to the appellee, he be required to compensate defendant for all of such expenditures, is overruled and denied, to which the defendant then and there excepted. Motion by defendant for new trial made January 1, 1903, overruled.

Appellant assigns four errors alleged to have been committed by the court, the first, second, and third, being, in substance, that the court erred in comfirming the master's reports filed December 18, 1902, for the reasons that the law, under which this cause was transferred to the equity docket and the proceedings had before the master after the institution of this case but before final judgment, was repealed by the adoption of the supplemental treaty between the Choctaws and Chickasaws and the United States, and alleging that the cause heard by the master was one set up under the third section of the Curtis act, being a claim for the amount of improvements made by appellant on the premises in question together with payment made by him for the use of the premises which largely exceeded

the value of the use and occupation of the premises during the time of appellant's possession, and that the repeal of the third section of the Curtis act rendered the proceedings in the nature of an equitable action null and void.

The fourth assigns the error of the court in sustaining appellee's demurrer to that portion of the appellant's answer which set up the defense of the payment of $3,000 to appellee and his vendors for use and occupation of the premises as provided by the contract between the appellant and George and Rose Roberson. This action of forcible detainer is an action at law authorized by chapter 28 of Carter's Ind. Ter. Ann. St. 1899. The proceeding was begun and prosecuted in all respects under the provisions of this statute until the filing of the appellant's amended answer, which denied all the material allegations of the petition, and set up by way of affirmative defense a claim for improvements made by him upon the land during the term of his possession as provided by section 3 of an act of Congress known as the "Curtis Bill," approved June 28, 1898. The provisions of that act applicable to this case provided: "That any person being a noncitizen in possession of lands, holding the possession thereof under an agreement, lease or improvement contract with either of said nations or tribes or any citizen thereof, executed prior to January 1st, 1898, may, as to lands not exceeding in amount 160 acres, in defense of any action for the possession of said lands show that he is and has been in peaceable possession of said lands, and that he has while in possession made lasting and valuable improvements thereon, and that he has not enjoyed the possession thereof a sufficient length of time to compensate him for such improvements. Thereupon the court or jury trying said cause shall determine the fair and reasonable value of such improvements and the fair and reasonable rental value of such lands for the time the same shall have been occupied by such

person, and if the improvements exceed in value the amount of rents with which such person should be charged, the court in its judgment, shall specify such time as will in the opinion of the court compensate such person for the balance due and award him possession for such time unless the amount be paid by claimant within such reasonable. time . as the court may specify. If the finding be that the amount of rents exceed the value of the improvements, judgment shall be rendered against the defendant for such sum, for which execution may issue." This provision did not change the character of the proceeding, that is, from a law action to an action in equity. It appears, however, that the court or the parties to the action conceived the necessity of transferring it to the equity docket and trying it as a case in equity, and this was not only acquiesced in by all the parties, and a great amount of testimony taken before the master, and his findings reported thereon, but an agreement was entered of record by which the parties agreed that the master's estimate of the value of the improvements under the evidence, and the rents and profits on the premises thereunder, should be accepted as the true value of the improvements and the true value of the rents and profits. Whatever may have been the right of the parties to a jury trial, this was an express waiver of the jury trial, and the transferring of the case to the equity docket, if irregular, was a waiver by the parties, and it is not contended by the appellant in this case that there is any irregularity in the proceeding except the refusal of the court to allow him credit for $3,000 paid as rent of the premises, but it is contended by the appellant that the only authority for allowing improvements and betterments as a credit against rents or for use and occupation was by virtue of the third section of the Curtis act, and, without that, the party found wrongfully occupying premises was chargeable with the damages suffered by the owner during said occupation, which damages might be measured by the rental value of the

premises during such time, and the only judgment that can be rendered for a plaintiff in an action of forcible entry and detainer under the statute is for the possession of the premises and for damages for their detention. The provisions of the Curtis act for allowing the occupant for improvements made was entirely of an equitable character but not necessarily an equitable case to be tried upon the equity docket, for, under the procedure in this jurisdiction, an equitable defense is permissible in an action at law.

It appears from the record, and the fact must be taken notice of by the court that the third section of the Curtis act was repealed by a subsequent act of Congress put in force September 25, 1902. (32 Stat. 656, c. 1362, § 67) that contained no saving clause as to any causes that might be pending under the provisions of the Curtis act. At that time this case had not been determined but was still pending awaiting the final report of the master in chancery, which was not filed in the court until December thereafter, and the decree and the judgment of the court finding in favor of plaintiff, not only for the possession of the premises in question, but for the sum of $1,732.90 as damages, which was the amount found due for the use and occupation of the premises over and above the value of the improvements. Thereafter appellant moved the court for an order to transfer this cause from the equity docket to the law docket, and to permit the reform of the pleadings so as to conform to the law as it now exists, and, for the issue arising in this case, to be given a jury trial. This motion was denied by the court. The first question to be considered is whether or not the repeal of the third section of the Curtis act had the effect to deprive the court of the authority to proceed further with the case under that act. Sutherland on Statutory Construction, § 162, is in part as follows: "The general rule is that, when an act by the Legislature is repealed"

without a saving clause, it is considered, except as to trans-
actions past and closed, as though it never had existed." In
the case of Railroad vs Grant, 98 U. S. 398, 25 L. Ed. 231,
it is held that it is well settled if a law conferring jurisdiction
is repealed without any reservation as to pending cases all
such cases fall with the law, citing a number of cases in the
United States Supreme Court in support thereof. It is very
clear that the court's power to act, where such action is solely
authorized by express statute, must cease when the authority
to act ceases, therefore, the court had no authority or jurisdic-
tion in this case to allow any of the rights created in favor
of the appellant by the third section of the Curtis act, and, as
a part at least of the judgment and decree in the case rested
for its authority upon this section of the Curtis act, the decree
must necessarily be void as to that part. Furthermore, it
is apparent that both parties submitted the case to the jurisdic-
tion of the court of equity upon the belief and assumption
that this third section of the Curtis act created an equitable
remedy in favor of the appellant, and therefore agreed and
consented that it should go to the equity docket and be tried
as an equity case. This equity having been abrogated by
the act of Congress of September 25, 1902, before the final
disposition of the case, either party would, in such case, have
the right to have the case transferred to the law docket and
be retried as an action at law with the benefit of a trial by
jury, for the reason that the issues had been changed by the
repeal of the statute. Waiver of the constitutional right of
trial by jury should be strictly construed. Cross vs State,
78 Ala. 430. It has been held that, where the parties agree
to waive the jury upon certain issues joined, and the plaintiff
subsequently, by leave of the court, files an additional count
to the declaration, raising new issues, it is error to force the
parties to trial without a jury if demanded by either. Gage
vs Commercial National Bank, 86 Ill. 371. Said Summerville,

J., in Cross vs State, supra: "An agreement to waive the right of trial by jury must ordinarily be construed to apply only to the particular trial at which it is made, as the waiver is a renunciation of a valuable constitutional right and must be construed strictly. It may be well supposed that a defendant would be perfectly willing for a particular judge to try him, when he would not wish his successor, or that he would be willing to be tried the first time by a judge, when he would not submit to a second trial by the same judge, after such officer had convicted him one or more times, so that the judicial mind might not be absolutely free from the influence of a bias created by the circumstances of such previous conviction." So, in this case, we are clear that the act of Congress repealing the third section of the Curtis bill totally changed the character of the case and deprived it of all equitable features whatever, and left it purely as an action at law, properly belonging to the law docket and to be tried by a jury unless the parties expressly waived the same.

Without considering the said fourth error assigned, the case is reversed and remanded, with directions to the court to transfer the same to the law docket and allow amendment of the pleadings to conform to the changed condition of the case.

GILL, C. J., and CLAYTON, J., concur.